IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| MAEOLA GOLDTHRIP, and<br>VICKIE GOLDTHRIP<br>Plaintiffs,<br><br>v.<br><br>DePUY ORTHOPAEDICS, INC., and<br>JOHNSON and JOHNSON,<br>Defendants. | ) | CIVIL ACTION FILE<br><br>NO. 15-CV-651-B |

**COMPLAINT**
**PRODUCTS LIABILITY**

COMES NOW PLAINTIFFS, Maeola Goldthrip and Vickie Goldthrip, and for their cause of action against Defendants, DePuy Orthopaedics, Inc., and Johnson & Johnson, states to the Court as follows:

**PARTIES**

1.

Plaintiffs are citizens and residents of the State of Alabama.

2.

Defendant DePuy Orthopaedics, Inc. ("DePuy") is, and at all times relevant to this Complaint was, an Indiana Corporation duly organized and existing by law, in good standing, with its principal place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581. DePuy is and was at all times relevant herein doing business in and/or having directed its activities at the State of Alabama, and regularly conducted business in the State of Alabama and throughout the United States. DePuy designed, manufactured, and sold the Prodigy Total Hip System that is subject to this lawsuit.

3.

Defendant Johnson & Johnson ("J&J") is, and at all times relevant to this complaint was, a New Jersey Corporation duly organized and existing by law, in good standing, with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. J&J is and was at all times relevant herein doing business in and/or having directed its activities at the State of Alabama, and regularly conducted business in the State of Alabama and throughout the United States. As DePuy's parent company, J&J was involved in the design, manufacture, and sale of the Prodigy Total Hip System that is subject to this lawsuit.

4.

At all times relevant herein, Defendants, transacted, solicited, and conducted business in the State of Alabama and in particular this District, and derived substantial revenue from such business.

5.

At all times relevant herein, Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, advertising, promoting, marketing, distributing, labeling, and/or selling the subject product.

6.

At all times relevant herein, Defendants expected or should have expected that their acts would have consequences within the United States, and in the State of Alabama, in particular.

7.

At all times relevant herein, Defendants were acting by and through their agents, servants and employees who were all acting within the course and scope of their employment.

8.

At all times relevant herein, each Defendant was the representative, agent, employee, or alter ego of the other defendant and in doing the things alleged herein was acting within the scope of its authority.

9.

DePuy and J&J are collectively referred to herein as "Defendants."

**JURISDICTION AND VENUE**

10.

Complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and therefore subject matter jurisdiction in this Court is proper under 28 U.S.C. § 1332.

11.

This Court has personal jurisdiction over the Defendants pursuant to Alabama long-arm statute, Ala. R. Civ. P. Rule 4.2, in that Defendants transacted business in the State of Alabama, made a contact within the State of Alabama and/or committed a tortuous act in this State.

12.

The Defendants, and each of them, have sufficient minimum contacts with the State of Alabama to justify the exercise of personal jurisdiction over it by the Court. Specifically, Defendants conduct substantial business in the State of Alabama market and sell their products in the State of Alabama and direct their business toward the residents of the State of Alabama.

13.

Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) as Plaintiff's claims and causes of action arise out of events and omissions that substantially occurred within the judicial district for the Southern District of Alabama.

**BACKGROUND**

14.

On or about March 22nd, 2000, Plaintiff, Maeola Goldthrip (Ms. Maeola), underwent left total hip arthroplasty, specifically with the DePuy Prodigy Total Hip System with the 10.5MM diameter Femoral Stem.

15.

On or about December 25th, 2013, Ms. Maeola was at her residence enjoying the company of her family on Christmas Day. As Ms. Maeola was walking from her kitchen into the living room she unexplainably fell straight down in almost a seated position. Her left hip completely gave out. Thereafter it was determined that Ms. Maeola had suffered a failed left hip replacement and was diagnosed with a broken femoral component (femoral stem) of the left hip prosthesis.

16.

As a direct and proximate result of the broken femoral stem of the left hip, Ms. Maeola was thereby seriously and permanently injured and damaged in the following respects, to wit: Ms. Maeola sustained a failed left hip replacement with resulting pain and damage to the surrounding bones, joints, muscles, tendons, ligaments, cartilages, nerves, vessels and tissue; that Ms. Maeola suffered, suffers and will in the future suffer pain, injury and total immobility; that Ms. Maeola has been caused to undergo reasonable

and necessary medical care and treatment, including a revision arthroplasty, and will in the future undergo further medical care and treatment; that Ms. Maeola has been caused to suffer total lack of mobility since her failed hip replacement, even after a revision arthroplasty in January of 2014; that Ms. Maeola has been caused to incur reasonable and necessary medical expenses in excess of $145,729.50 and may in the future incur further expense; that Ms. Maeola suffered, suffers and will in the future suffer great pain of the body and mind; that Ms. Maeola's ability to enjoy the ordinary pursuits of life has been permanently taken away; and that all of Ms. Maeola's injuries and damages are the direct and proximate result of the failed left hip replacement and broken femoral stem of the left hip prosthesis.

## COUNT I
## STRICT LIABILITY- PRODUCT DEFECT

17.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 16 of this Complaint.

18.

Defendants designed, developed, manufactured, advertised, sold and released into commercial distribution, an implantable total hip prosthesis, specifically the DePuy Prodigy Total Hip System with the 10.5MM diameter Femoral Stem.

19.

At the time of the sale, the Prodigy Total Hip System, and in particular the 10.5MM diameter femoral stem component, was then in a defective condition and was unreasonably dangerous when put to a reasonably anticipated use, even if properly installed, in that Defendants' product is subject to premature and sudden fatigue fracture due to:

a.) the inadequately low fatigue strength and inadequately limited ductility of the alloy used for the product.

b.) an inadequate annealing process carried out in the manufacturing of the product and/or the product's material.

20.

The aforementioned defects create an unreasonably dangerous risk of fracture when using Defendants' product.

21.

At all relevant times, Defendants' Prodigy Total Hip System product was used in a manner reasonably anticipated.

22.

As a direct result of the defective condition of the Prodigy Total Hip System's femoral stem component as existed when the component was sold, Plaintiff was injured and damaged as set out with more particularity in paragraph 16 of this Complaint.

WHEREFORE, Plaintiffs prays for judgment against the Defendants for compensatory losses and damages for the costs of this litigation, plus interest including any prejudgment interest to which the Plaintiffs may be entitled, and further, Plaintiffs demand a trial by jury.

**COUNT II**
**STRICT LIABILITY – FAILURE TO WARN**

23.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 22 of this Complaint.

24.

At the time of the sale by Defendants, the Prodigy Hip System's femoral stem was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics in that it is subject to premature and sudden fatigue fracture due to:

a.) the inadequately low fatigue strength and inadequately limited ductility of the alloy used for the product.

b.) an inadequate annealing process carried out in the manufacturing of the product and/or the product's material.

25.

Defendants failed to warn or adequately warn of the risk of harm due to the aforesaid risk of premature and sudden fatigue fracture.

26.

At all relevant times, Defendants' Prodigy Hip System product was used in a manner reasonably anticipated.

27.

As a direct result of the failure to give adequate warning of the danger due to the aforesaid risk of premature and sudden fatigue fracture and defective condition of the Prodigy Hip System's femoral stem component as existed when the component was sold, Plaintiff was injured and damaged as set out with more particularity in paragraph 16 of this Complaint.

WHEREFORE, Plaintiffs prays for judgment against the Defendants for compensatory losses and damages for the costs of this litigation, plus interest including any prejudgment interest to which the Plaintiffs may be entitled, and further, Plaintiffs demand a trial by jury.

**COUNT III**
**NEGLIGENCE – PRODUCT DEFECT**

28.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 27 of this Complaint.

29.

Defendants manufactured and designed the product at issue, specifically the Prodigy Hip System that includes the 10.5MM femoral stem component.

30.

As manufactured and designed, said product had a latent defect or hazard which rendered it defective and unreasonably dangerous when put to a reasonably anticipated use in that it was subject to premature and sudden fatigue fracture due to:

a.) the inadequately low fatigue strength and inadequately limited ductility of the alloy used for the product.

b.) an inadequate annealing process carried out in the manufacturing of the product and/or the product's material.

31.

Defendants were negligent in that they failed to use ordinary care to manufacture or design said product to be reasonably safe when put to a reasonably anticipated use when Defendants knew, or in the exercise of ordinary care should have known, that its manufacturing or design characteristics created an unreasonably dangerous risk of premature and sudden fracture.

32.

As a direct result of the Defendants' negligence in its manufacture or design of said Prodigy Hip System's femoral stem component, said product was unreasonably

dangerous and defective when sold, and Plaintiff was thereby injured and damaged as set out with more particularity in paragraph 16 of this Complaint.

WHEREFORE, Plaintiffs prays for judgment against the Defendants for compensatory losses and damages for the costs of this litigation, plus interest including any prejudgment interest to which the Plaintiffs may be entitled, and further, Plaintiffs demand a trial by jury.

**COUNT IV**
**NEGLIGENCE – FAILURE TO WARN**

33.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 32 of this Complaint.

34.

Defendants supplied the product for use.

35.

The product had a particular defect or hazard in its manufacture or design which rendered it defective and unreasonably dangerous when put to a reasonably anticipated use in that it was subject to premature and sudden fatigue fracture due to:

a.) the inadequately low fatigue strength and inadequately limited ductility of the alloy used for the product.

b.) an inadequate annealing process carried out in the manufacturing of the product and/or the product’s material.

36.

Defendants had no reason to believe that the user would realize the danger posed by said product’s aforesaid defect or hazard.

37.

Defendants knew or by using ordinary care should have known of the dangerous condition of the product.

38.

Defendants failed to warn or adequately warn of the danger.

39.

As a direct result of the negligent failure to give adequate warning of the danger due to the aforesaid risk of premature and sudden fatigue fracture and defective condition of Produgy Hip System as existed when the component was sold, Plaintiff was injured and damaged as set out with more particularity in paragraph 16 of this Complaint.

WHEREFORE, Plaintiffs prays for judgment against the Defendants for compensatory losses and damages for the costs of this litigation, plus interest including any prejudgment interest to which the Plaintiffs may be entitled, and further, Plaintiffs demand a trial by jury.

**COUNT V**
**LOSS OF CONSORTIUM**

40.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 39 of this Complaint.

41.

Plaintiff, Vickie Goldthrip (Ms. Vickie) is the daughter of the Plaintiff Maeola Goldthrip (Ms. Maeola) and as such they lived together as Mother and Daughter.

42.

For the reasons set forth herein, Ms. Vickie has had to drastically alter her life in that she has become liable to take care of Ms. Maeola, pay for certain medical aid, pay

for certain treatments, pay for certain medications, change Ms. Maeola's clothing, dress Ms. Maeola, help Ms. Maeola use the bathroom, bathe her and assist her in the normal day to day activities that she (Vickie) normally shouldn't have to be doing but for the Prodigy Total Hip replacement failure.

43.

For the reasons set forth herein, Plaintiff, Vickie has been caused, presently and in the future, to suffer the loss of her Mother's companionship, services, and their relationship has been impaired and depreciated, and that Mother Daughter association has been permanently altered for the rest of Ms. Maeola'a life as Ms. Maeola will never be able to walk again, and accordingly, Plaintiff Ms. Vicki has been caused great mental anguish.

WHEREFORE, Plaintiffs prays for judgment against the Defendants for compensatory losses and damages for the costs of this litigation, plus interest including any prejudgment interest to which the Plaintiffs may be entitled, and further, Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for the following relief:

A. Judgment in favor of Plaintiffs and against all Defendants, for all past and future medical expenses in the sum of One Hundred Forty Five Thousand Seven Hundred Twenty Nine and 50/100 Dollars ($145,729.50);

B. Judgment in favor of Plaintiffs and against all Defendants, for compensatory damages for, but not limited to, disfigurement, pain and suffering, mental anguish, emotional distress, loss of consortium, loss of liberty, and the loss of the quality

of her life for remaining years of her life in the sum of Five Million Dollars ($5,000,000.00);

C. Punitive and/or exemplary damages in the amount of Seven Hundred Twenty Eight Thousand Six Hundred Forty Seven and 50/100 Dollars ($728,647.50);

D. Pre-and Post-Judgment costs;

E. Costs of these proceedings; and

E. Any and all further relief, both legal and equitable, that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby requests trial by jury as to all issues.

Stipulation to Withhold Process

Because of time constraint and the non-ability of both parties to fully negotiate and resolve this case, Plaintiffs are filing this action to preserve their legal rights within the statute of limitations but are withholding Service of Process in an effort to resolve this matter without the extreme expense required by both sides. Process will be served at a later date as agreed to by both parties.

Dated: December 23rd 2015

Respectfully Submitted By:

CHAVEZ LAW FIRM, LLC.
420 20TH Street North, Suite 2200
Birmingham AL 35203
205-379-1043 (o) 205-389-1001 (f)
adam@chavez.com

By______________________________
John Adam Chavez
Alabama bar No.: 4730-B65F