IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

MAEOLA GOLDTHRIP, *et al.*,       :
                                  :
    Plaintiffs,               :
                                  :
vs.                               : CIVIL ACTION NO. 15-00651-KD-B
                                  :
JOHNSON and JOHNSON,              :
                                  :
    Defendant.                :

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant Johnson and Johnson's Motion to Dismiss (Doc. 19). The motion, which has been fully briefed and is ripe for resolution, has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Defendant's Motion to Dismiss be **granted**.

### I.   Background Facts

Plaintiffs Maeola Goldthrip and Vickie Goldthrip filed the instant action against Defendants DePuy Orthopaedics, Inc. (hereinafter "DePuy"), and its parent corporation, Johnson and Johnson (hereinafter "J&J") for a product defect in an

implantable total hip prosthesis sold by Defendants. (Doc. 1) [1].
In their complaint, Plaintiffs allege that the court has
personal jurisdiction over these Defendants pursuant to the
Alabama long arm statute in Ala. R. Civ. P. Rule 4.2, as the
Defendants transacted business in the State of Alabama, made a
contract within the State of Alabama, and/or committed a
tortuous act in this State. (Id. at 4). They further state that
each Defendant has sufficient minimum contacts with the State of
Alabama to justify the exercise of personal jurisdiction by the
Court. (Id.). According to Plaintiffs, "Defendants conduct
substantial business in the State of Alabama, market and sell
their products in the State of Alabama, and direct their
business toward the residents of the State of Alabama." [2] (Id.).

---

[1]  Summary Judgment was granted in favor of DePuy on May 13, 2016.
(Doc. 33).

[2]  Plaintiff's statements on J&J include the following detailed
allegations relevant to jurisdictional analysis: that J&J is a
New Jersey corporation with its principle place of business in
New Brunswick, N.J; that J&J does business or directs and
conducts its business and activities in State of Alabama; that
J&J "transacted, solicited, and conducted business in the State
of Alabama…and derived substantial revenue from such business";
that J&J was "engaged in the business of designing, developing,
manufacturing, testing, packaging, advertising, promoting,
marketing, distributing, labeling, and/or selling the subject
product"; that J&J expected or should have expected "that their
acts would have consequences within… the State of Alabama, in
particular"; and that "…each Defendant was the representative,
agent, employee, or alter ego of the other defendant and in
doing the things alleged herein was acting within the scope of
its authority." (Doc. 1 at 2-3).

On April 4, 2016, J&J filed a Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum on the grounds that J&J is not subject to personal jurisdiction in the State of Alabama. (Docs. 19, 20). J&J argues that it is not incorporated in Alabama, does not have its principle place of business in Alabama, and is not otherwise "at home" in Alabama. (Id. at 1). Attached to its Motion to Dismiss is the affidavit of Lacey P. Elberg, an Assistant Secretary of J&J. J&J alleges that the statements contained in this affidavit show that there is no specific or general jurisdiction over J&J, as J&J has no contacts whatsoever with Alabama, and Plaintiffs cannot assert jurisdiction through an alter ego theory. (Doc. 20 at 5, 11).

In Plaintiffs' Response in Opposition, they argue that Alabama has personal jurisdiction over J&J because J&J is the parent company of DePuy and plays a "very active role in settling and negotiating product liability cases in most of DePuy's hip implant lawsuits throughout the United States", and that DePuy's contacts in Alabama should be imputed to J&J. (Id. at 1). In support of this claim, they cite multiple news articles and cases decided in other circuits where J&J has taken an active role in lawsuits with DePuy, note that DePuy identifies itself as a "Johnson and Johnson Company" on its various logos, and that DePuy is listed on J&J's website. (Id. at 2, 5, 7).

In J & J's Reply (Doc. 31) [3], it argues that Plaintiffs have failed to submit any admissible evidence to support the Court's exercise of personal jurisdiction over J&J, and the inadmissible documents they have submitted do not support Plaintiff's position on jurisdiction or respond to J & J's evidence challenging personal jurisdiction. (Id. at 1, 5).

The motion has been fully briefed and is now ripe for resolution.

## II. LEGAL STANDARD/BURDEN OF PROOF

Rule 12 of the Federal Rules of Civil Procedure allows a party to assert the defense of lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(6). "[A] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." United Technologies Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)(citations omitted); see also Hard Candy, LLC v. Hard Candy

---

[3] Also pending before the court is Plaintiffs' Motion to Strike J & J's Reply. (Doc. 32). Plaintiff argues that J & J's Reply is untimely. Pursuant to S.D. AlaLR 7(d), Movant's Reply must be filed within 7 days of service of the non-movant's response, which in this case was May 2, 2016. Defendant filed their reply on May 11, 2016. (See Doc. 31). However, pursuant to the order entered by the undersigned Magistrate Judge on April 7, 2016, the reply deadline was May 11, 2016. (Doc. 23). Defendants filed a timely reply under the April 7 order, and therefore Plaintiff's Motion to Strike is due to be **DENIED**. The Court will consider Defendant's Reply moving forward.

Fitness, LLC, 106 F. Supp. 3d 1231, 1238, 2015 WL 3377906 at *4
(S.D. Fla. May 13, 2015)("Initially, a plaintiff seeking to
establish a court's jurisdiction over a non-resident defendant
need only allege sufficient material facts to make out a *prima
facie* case of jurisdiction."). "Where, as here, the defendant
challenges jurisdiction by submitting affidavit evidence in
support of its position, the burden traditionally shifts back to
the plaintiff to produce evidence supporting jurisdiction."
Mazer, 556 F.3d at 1274. (citations and internal quotation marks
omitted). "A *prima facie* case is established if the plaintiff
presents affidavits or deposition testimony sufficient to defeat
a motion for judgment as a matter of law." PVC Windoors, Inc. v.
Babbitbay Beach Const., N.V., 598 F. 3d 802, 810 (11th Cir.
2010).

"Where the evidence presented by the parties' affidavits
and deposition testimony conflicts, the court must construe all
reasonable inferences in favor of the non-movant plaintiff. … If
such inferences are sufficient to defeat a motion for judgment
as a matter of law, the court must rule for the plaintiff,
finding that jurisdiction exists." PVC Windoors, 598 F. 3d at
810 (citation, internal marks and footnote omitted); see also
Hard Candy, 2015 WL 3377906, at *4 ("In assessing the evidence,
the court must construe all reasonable inferences in favor of
the plaintiff.")(citation and internal quotation marks omitted).

Notwithstanding the burden-shifting framework identified herein, "[i]t goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).

When faced with a Rule 12(b)(6) motion "the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long arm provision[4] and (2) the requirements of the due-process clause of the Fourteenth Amendment." Continental Motors, Inc. v. Jewell Aircraft, Inc., 882 F. Supp. 2d. 1296, 1306 (S.D. Ala. 2012)(citation omitted). "In this case, the two inquiries merge, because Alabama's long arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." Sloss Industries Corp. v. Eurisol, 488 F. 3d 922, 925 (11th Cir. 2007). Thus, the operative question is whether the

---

[4]Alabama's long arm statute provides, in part:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action of this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States…

Ala. R. Civ. P. 4.2(b)(Effective August 1, 2004).

exercise of personal jurisdiction over J&J in Alabama comports with the guarantees of due process.

The particulars of the constitutional analysis depend on whether the type of personal jurisdiction asserted in a particular case is "general" or "specific". Facts supporting personal jurisdiction "may be general, which arise from the party's contacts with the forum state that are related to the claim." Continental Motors, 882 F. Supp. 2d at 1307 (citation omitted). General jurisdiction refers "to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose" because the defendant is "at home" in the forum. Daimler AG v. Bauman, 134 S. Ct. 746, 752 (2014).

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." PVC Windoors, 598 F.3d at 808 (citation and internal quotation marks omitted). "In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposely availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum's state's laws; and (3) whether the exercise of personal jurisdiction

comports with 'traditional notions of fair play and substantial justice.'" Louis Vuitton Malletier, S.A. v. Mosseri, 736 F. 3d 1339, 1355 (11th Cir. 2013)(citations omitted). The plaintiff bears the burden of establishing each of the first two prongs, after which the defendant/movant must make a "compelling case" that exercising jurisdiction would violate traditional notion of fair play and substantial justice. Id.

### III. **ANALYSIS**

Under the due process clause, "a State may authorize its courts to extend personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notion of fair play and substantial justice." Daimler, 134 S. Ct. at 754 (quoting International Shoe Co. v. Washington, 326 U.S. 310 (1945))(internal quotations omitted). "The Due Process Clause, by ensuring the 'orderly administration of the laws,' gives a decree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (quoting International Shoe, 326 U.S. at 319).

Defendant argues that Plaintiffs cannot establish personal jurisdiction over J&J in the instant case, because J&J has no

contacts with the State of Alabama. (Doc. 20 at 5). As stated above, there are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. Daimler, 134 S. Ct. at 754. Plaintiff argues that this court has both general and specific jurisdiction over J&J in this action, while Defendant disagrees on both counts.

### i. **General Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic as to render them essentially at home in the forum State.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). As explained by the Eleventh Circuit Court in Carmouche v. Tamborlee Mgmt., Inc., 789 F. 3d 1201, 1204 (11th Cir. 2015):

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations," without offending due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 131 S. Ct. at 2851). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler AG v. Bauman, 571 U.S. --- , 134 S. Ct. 746, 760, 187 L.Ed. 2d 624 (2014). "A corporation's place of incorporation and its principal place of business are "paradigm all-purpose forums." Id. And "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" will be "so substantial and of such a nature as to render the corporation at home in that State" only in "exceptional" cases. Id. at 761 n.19.

Carmouche, 789 F. 3d at 1204.

In this case, it is undisputed that J&J is incorporated under the laws of the state of New Jersey, and has its principle place of business in New Brunswick, New Jersey. (Doc. 20-1). Moreover, J&J is not registered or qualified to do business in Alabama, does not lease or own any real estate in Alabama, does not ship any products to Alabama, and does not engage in local advertising in the State of Alabama. (Doc. 20-1 at 2). And, there is no indication in the record that J&J, as an independent corporation, has ever participated in any business activities in Alabama whatsoever, thus it has no activities that are in any way analogous to those present in the 'exceptional' cases where general jurisdiction was found. See Carmouche, 789 F. 3d 1201, 1205. [5]

---

[5] The Court in Carmouche compared and contrasted a long line of precedent indicating the type of activities that justified the exercise of federal jurisdiction over a corporation outside of its state of incorporation or principle place of business: Compare Perkins v. Benguet Consol. Min. Co., 342 U.S. 437, 72 S. Ct. 413, 96 L. Ed. 485 (1952)(general jurisdiction existed in Ohio, as the court determined that Ohio had become the temporary principle place of business when the president of the corporation moved to Ohio and oversaw the work of the company from his office there) with Carmouche, 789 F. 3d 1201, 1205 (no general jurisdiction despite a Florida bank account, two Florida addresses, purchasing insurance from a Florida company, filing financial statements with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to the jurisdiction of the Southern District of Florida for all lawsuits arising out of agreements with
(Continued)

To the extent that Plaintiff argues that DePuy's contacts are attributable to J&J for general jurisdiction purposes, that argument is without merit. "[A]s long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum may not be attributed to the other." Consol. Dev. Corp. v. Sherritt, Inc., 216 F. 3d. 1286, 1293 (11th Cir. 2000). Generally, a foreign parent corporation "is not subject to the jurisdiction of the forum state merely because a subsidiary is doing business there". Id. Where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." Id. (citing Portera v. Winn Dixie of Montgomery, 996 F. Supp. 1418, 1423 (M.D. Ala. 1998)).

---

Carnival); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S. Ct. 1868, 1873, 80 L. Ed. 404 (1984) (no general jurisdiction found in Texas where New York bank account accepted checks drawn on Houston bank, the CEO visited Texas to negotiate a contract, 80 percent of the helicopter fleet was purchased from Texas, and the company sent personnel to Texas for training); and Fraser v. Smith, 594 F. 3d 842 (11th Cir. 2010) (no general jurisdiction in Florida though tour operator maintained a website accessible from Florida, advertised in several national publications including the Miami Herald, purchased approximately half the company's boats in Florida, and sent employees and representatives to Florida for training and to promote the company's services). Carmouche, 789 F. 3d 1201, 1205.

For a plaintiff to persuade the court that general personal jurisdiction exists over a parent company because of the subsidiary's actions, the plaintiff must show that the subsidiary's corporate existence was a simple formality, and that it was merely the agent of the parent company. Consol. Dev. Corp. 216 F. 3d. at 1293 (general jurisdiction not imputed on parent corporation where the only contacts were bonds issued in the U.S. several years previously and there was a casual presence of a corporate agent for service of process. The parent was not registered to do business and had no employees in the country in question, and the subsidiary had its own board of directors, determined its own pricing and marketing, and had its own bank accounts and employees).

Based upon the affidavit provided by J&J, J&J and DePuy are separate legal entities, and "their corporate relationship is one of parent-subsidiary." (Doc. 20-1 at 2). Further, they have maintained separate corporate identities, separate boards of directors and officers, and separate by-laws. (Id. at 2-3). DePuy is not a shell or sham corporation of J&J, or vice versa. (Id. at 3). Plaintiffs provide no evidence to dispute these assertions. Therefore, the Court finds no basis for imputing the contacts of DePuy to their separate and distinct parent company, J&J, for the purposes of general jurisdiction.

**ii. <u>Specific Jurisdiction</u>**

"[T]he central concern of the [specific jurisdiction] inquiry" is the "relationship among the defendant, the forum, and the litigation." Daimler, 134 S. Ct. at 754 (quoting Shaffer v. Heitner, 433 U.S. 186, 197 (1977)); see also Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014). As stated *supra*, there is a three-pronged due process test to determine whether specific personal jurisdiction should apply to a Defendant – (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposely availed' himself of the privilege of conducting activities within the forum state and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" See Louis Vuitton Malletier, S.A, 736 F. 3d at 1355.

Courts may not ascribe the contacts of one co-defendant to another in determining personal jurisdiction, and this court has rejected the idea that contacts that only exist through a subsidiary are any more than a 'mirage' for personal jurisdiction purposes. Cont'l Motors, Inc. v. Jewell Aircraft, Inc., 882 F. Supp. 2d 1296, 1307 (S.D. Ala. 2012)(citing Fraser v. Smith, 594 F. 3d 842, 852 (11th Cir. 2010)). This Court's inquiry must instead focus on the direct causal relationship among Defendant J & J, the forum, and the litigation. Id. at 1308.

The first prong indicates that it must be the defendant's "suit-related conduct" that creates a "substantial connection with the forum State" in order to confer specific jurisdiction. Walden, 134 S. Ct. 1115 at 1121. J&J claims that it is a holding company that did not engage in any such conduct. (Doc. 20 at 10; Doc. 20-1 at 2). "…J&J did not design, and does not manufacture, inspect, advertise, distribute, and/or sell the Porocoat Prodigy Hip Prosthesis or any other component described in the Complaint. Any such activities are conducted independently by DePuy Orthopaedics, Inc." (Doc. 20-1 at 2).

At least one other court has determined that J&J is considered a mere 'holding company', and not subject to personal jurisdiction in a suit against a subsidiary. In Androphy v. Smith & Nephew, Inc., 31 F. Supp. 2d 620, 622 (N.D. Ill. 1998), the court discussed the relationship between J&J and their subsidiary, JJPI, and observed that J&J did not pay any of JJPI's salaries, did not cover any expenses or losses, and maintained separate and independent bylaws, minutes, corporate records, financial records, and bank accounts from its subsidiary. The Court in Androphy held:

> "Johnson [& Johnson] is not subject to personal jurisdiction under the Due Process clause of the Fourteenth Amendment. Johnson has never manufactured, used, or sold the knee-resection instruments at issue in the instant suit, either in Illinois or elsewhere. Further, it is not registered to do business in Illinois, and it has no agents

14

> here. It is a holding company which neither transacts business nor contracts to provide products or services in Illinois. Thus, Johnson lacks the "minimum contacts" with the forum state that would justify the exercise of personal jurisdiction. It has not "purposely avail[ed] itself of the privilege of conducting activities" [in the state], and could not "reasonably anticipate being hailed into court there."

Id. The facts in the Androphy case are analogous to those in the instant case. Here, Plaintiffs claim that DePuy's minimum contacts should impute to J&J because J&J is "so intermingled and joined with DePuy that it is not only foreseeable for Johnson to expect to defend itself in Alabama but is also legally proper and fair". (Doc. 27 at 2). It appears that Plaintiff is arguing that jurisdiction should attach based on an alter ego theory; thus, the Court will analyze this claim upon that basis.

Federal courts have "consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over [a corporation] that would not ordinarily be subject to personal jurisdiction in that court when the. . . corporation is an alter ego... of a corporation that would be subject to personal jurisdiction in that court." Cahaba Disaster Recovery, LLC. v. DRC Emergency Servs., 2015 WL 9489911 at *3 (N.D. Ala. Dec. 30, 2015)(internal citations omitted). However, "[p]iercing the corporate veil is not a power that is exercised lightly." Cont'l Motors, Inc., 882 F. Supp. 2d at 1304.

Mere control and dominion does not suffice to trigger alter-ego status. Cont'l Motors, Inc., 882 F. Supp. at 1304. Under Alabama law, there are three elements that a plaintiff must meet to justify the court piercing the corporate veil under an alter ego theory. Cahaba Disaster Recovery, LLC v. DRC Emergency Servs., 2015 WL 9489911 at *4. These elements are:

> "1) The dominant party must have complete control and dominion of the subservient corporation's finances, policy, and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will or existence of its own;
>
> 2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
>
> 3) the misuse of this control proximately cause[d] the harm or unjust loss complained of."

Id. (citing First Health, Inc. v. Blanton, 585 So. 2d 1331, 1334-35 (Ala. 1991)).

Under the first prong of this analysis, courts look at a variety of factors, including whether the parent corporation owns "all or most" of the subsidiary's capital stock, whether the two entities share directors or officers, whether the parent finances the subsidiary or causes the subsidiary's incorporation, whether the subsidiary has grossly inadequate capital, whether the parent pays the subsidiary's expenses or losses, whether the subsidiary's directors or executives take

16

orders from the parent corporation in the parent's interests, and whether the formal legal requirements of the subsidiary are adhered to. Cahaba Disaster Recovery, LLC, 2015 WL 9489922 at *3 (citing Duff v. S. Railway Co., 496 So. 2d 760, 763 (Ala. 1986)). No one of these factors is dispositive; nor does this list exhaust the relevant factors. Duff, 496 So. 2d at 763.

Plaintiffs attempt to argue that J&J and DePuy are "intermingled" based on J&J's involvement in lawsuits against DePuy in Circuits across the country, the presence of the words "a Johnson & Johnson Company" on Depuy's logo, and the presence of DePuy on J&J's website. To prove J&J's involvement, they cite a variety of news stories, a magazine article, J&J's involvement in various DePuy's lawsuits, pictures of DePuy's logo, and a link to J&J' website. This showing is not sufficient.

When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden shifts back to the plaintiff to provide evidence supporting the court's exercise of jurisdiction over the defendant "unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F. 3d 1357, 1360 (11th Cir. 2006). J&J provided an affidavit from Lacey P. Elberg, a J & J corporate official, in support of its assertion that DePuy and J&J are

17

separate corporate entities. (Doc. 20-1).

The Elberg affidavit provides that J&J does not do business under the name of DePuy Orthopaedics, Inc.; that the manufacture and sale of the products at issue in the instant case are conducted independently by DePuy; that the two corporations maintain their own boards of directors and officers who are primarily responsible for their respective businesses; that the two corporations are separate legal entities whose relationship is that of parent-subsidiary; that DePuy is not referred to as a department or division of J&J; that the two corporations maintain their own separate and independent by-laws, minutes, and corporate records; and that the two corporations own, maintain, and operate their own respective facilities. (Doc. 20-1). Further, the Elberg affidavit provides that the two corporations are financially independent of one another - DePuy is fully capitalized; DePuy prepares its own financial statements and budgets and is responsible for its own profits and losses; that J&J does not pay for any research, salaries, raw materials, or any other operating expenses; that both corporations maintain their own separate financial records and bank accounts, and neither corporation attempts to divest assets

away from the other[6]. (Id.).

The evidence presented by J&J clearly shows that J&J and DePuy are separate corporations. Based upon the uncontroverted Elberg affidavit, none of the required factors outlined by the Alabama Supreme Court in Duff, which justify piercing the corporate veil, exist in the instant case. See Duff, 496 So. 2d at 763. Thus, the burden shifts back to Plaintiffs to substantiate their jurisdictional allegations "by affidavits or other competent proof." Polski Linie Oceaniczne v. Seasafe Transp. A/S, 795 F. 2d 968, 972 (11th Cir. 1986)(citations omitted).

The information submitted the Plaintiffs in support of their position do not rise to the level of competent proof.[7]

---

[6] J&J and its subsidiaries file certain government-mandated consolidated financial report, such Annual Reports on Form 10-K pursuant to the Securities Exchange Act of 1934, but all other records are separate. (Doc. 20-1 at 2).

[7] The Eleventh Circuit has generally considered newspaper articles to be inadmissible hearsay when offered for the truth of the matter asserted. United States v. Baker, 432 F. 3d 1189, 1211 (11th Cir. 2005) abrogated on other grounds by Davis v. Washington, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). In this case, Plaintiffs are clearly presenting the articles provided for the truth of the matter asserted in them – specifically, that J&J settled claims brought against their subsidiary DePuy. (Doc. 27 at 2, 6, 7) Further, the court has no foundation to determine the authenticity of the logos provided by Plaintiffs in their response. (Doc. 27 at 5). As such, this evidence provided by the Plaintiffs in support of this court's jurisdiction over the Defendant will not be considered going forward.

Plaintiffs cite three cases as proof that J&J is actively participating in lawsuits involving DePuy, namely Ljunggren v. Johnson and Johnson, 2016 U.S. Dist. LEXIS 27411 (C.D. Ca. March 2, 2016)(case remanded to Los Angeles Superior Court for lack of subject matter jurisdiction), Dobbs v. DePuy Orthopaedics, Inc., 2016 U.S. Dist. LEXIS 51843 (N.D. Ill. April 18, 2016)(order granting motion by plaintiff's counsel to enforce attorney's lien for fees and expenses), and Azefor v. DePuy Orthopaedics, Inc., 2016 U.S. Dist. LEXIS 27863 (D. Nev. March 3, 2016)(court denied DePuy's motion to dismiss as there was a material issue of fact regarding the statute of limitations). These cases do not include any discussion of J & J beyond their existence as a co-defendant. Nor do any of the cases discuss the court's personal jurisdiction over J&J. Indeed, there is no information about J&J's relationship with DePuy anywhere in the three referenced cases. Plaintiffs' reliance on these three cases (which merely show that J&J has been included as a co-defendant in suits against their subsidiary) falls far short of meeting the heavy burden to prove specific jurisdiction in this case.

The Plaintiffs also attempt to argue that the presence of DePuy on J&J's corporate website proves a sufficient connection

between the two corporations[8], but that argument is also without merit. J&J's website is clearly a passive informational website, and as such lacks jurisdictional significance. See Matthews v. Brookstone Stores, 469 F. Supp. 2d 1056, 1065 (S.D. Ala. 2007)("A purely passive informational website . . . lacks jurisdictional significance.") (citation omitted).   Thus, the Plaintiffs have failed to meet their burden of proving specific personal jurisdiction over J & J in light of the uncontroverted evidence submitted by J & J.

Based on the foregoing, the undersigned finds that Plaintiffs have failed to establish the existence of specific personal jurisdiction over J & J.

### IV. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that Defendant J & J's Motion to Dismiss be **GRANTED** because personal jurisdiction is lacking.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

---

[8] Johnson and Johnson's website can be found at www.jnj.com. (Doc. 21 at 5).

written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

  **DONE** this **8th** day of **December, 2016.**

        **/s/ SONJA F. BIVINS**
       **UNITED STATES MAGISTRATE JUDGE**